**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| MICHELLE L. OPALISKI, ) | CASE NO:   1:08-cv-01576 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | NANCY A. VECCHIARELLI |
| ) | |
| MICHAEL J. ASTRUE, ) | |
|     Commissioner of Social Security, ) | |
| ) | MEMORANDUM OPINION |
| Defendant. ) | AND ORDER |

Plaintiff Michelle Opaliski challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423 *et seq*. (the "Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the Court AFFIRMS the final decision of the Commissioner.

1

## I.  PROCEDURAL HISTORY

Ms. Opaliski applied for DIB in November 2004 and SSI in January 2005, alleging a period of disability commencing April 1, 2001.  The Commissioner denied her claim initially and on reconsideration.  Ms. Opaliski filed timely request for an administrative hearing.

On September 8, 2007, Administrative Law Judge Mark Carissimi  ( "ALJ") held a hearing on Ms. Opaliski's claims.  Ms. Opaliski and a vocational expert, Barbara Burk, ("VE Burk") testified at the hearing.  On October 23, 2007, the ALJ found that Ms. Opaliski was not under a "disability" as defined by the Act, because she had the residual functional capacity ("RFC") to perform her past relevant work as a self-service gas station attendant and food sales clerk.  (Tr. 28.)

This decision became the final decision of the Commissioner when the Appeals Council denied further review.  Ms. Opaliski filed an appeal to this Court.

On appeal, Ms. Opaliski claims the ALJ erred in (1) finding that Ms. Opaliski is capable of returning to past relevant work, and (2) finding that Ms. Opaliski is not entirely credible.  Ms. Opaliski also seeks remand pursuant to sentence six of 42 U.S.C. § 405(g), so that the ALJ may review evidence submitted only to the Appeals Council.

## II.  EVIDENCE

### A. Vocational History

Ms. Opaliski was 32 years old at the time of the administrative hearing and the ALJ's decision.  (Tr. 16, 59, 462).  Ms. Opaliski is a high school graduate.  From February 2003 through at least June 2005, she worked as a customer service

representative at a credit center. (Tr. 103, 110, 285.)  From 2000 until 2002, she held various jobs, including babysitter, deli worker, laborer, and convenience store cashier. (Tr. 103.)   From 1997 until 2000, Ms. Opaliski worked as a laborer in construction.  (*Id.*)  From 1995 until 1997, she worked as a manager at a gas station.  (*Id.*)  From 1993 until 1995, she worked in a nursing home as a dietary aide.  (*Id.*)  In 1992 and 1993, she worked as a dental assistant. (*Id.*)

### B.     Medical Evidence

#### 1.     Physical

In January 2005, Ms. Opaliski saw her general practitioner, Wayne Brabender, M.D.  At that time, she reported having problems falling asleep at work. (Tr. 246.)  She also reported numbness in her hands and thought perhaps she may be suffering from carpal tunnel syndrome. (*Id.*)  Dr. Brabender recommended an MRI. (*Id.*)

At a February 2005 appointment, Ms. Opaliski complained of back and neck pain. (Tr. 221.)  Dr. Brabender wanted to take her off some of her medications, hoping that she would "wake up a little bit. . . ."  (*Id.*).  Dr. Brabender thought she may need to be weaned from her medications in order to evaluate whether she suffered from an underlying sleep problem.  (*Id.*)  He also referred her to a neurologist, Mark Bej, M.D., for her sleep issues. (*Id.*)

Ms. Opaliski began seeing neurologist Mark Bej, M.D., in March 2005. (Tr. 342.) An electroneuromyogram (ENMG) in March 2005 was "normal," and showed no entrapment neuropathies or radiculopathy.  (Tr. 342.)

In April 2005, sleep studies showed periodic limb movement disorder ("PLMD") and mild sleep apnea during REM sleep. (Tr. 335-37.)  Dr. Bej prescribed a CPAP and

medication for the PLMD. (Tr. 332.)

In June 2005, state agency physician Esberdado Villanueva reviewed Ms. Opaliski's medical file and rendered a physical RFC assessment. (Tr. 323-330.)  He noted Ms. Opaliski's history of fibromyalgia; a normal February 2003 lumbosacral spine MRI; a normal gait and normal coordination evaluation from October 2003; and her complaints of daytime hypersomnia in 2005 with diagnoses of mild sleep apnea and PLMD. (Tr. 324-25.)  Dr. Villanueva opined that Ms. Opaliski should avoid climbing ladders, ropes, and scaffolds; driving; and working at heights and around dangerous machinery. (Tr. 325.)   He assessed that Ms. Opaliski could lift/carry and push/pull up to 50 pounds occasionally, and up to 25 pounds frequently, and could sit and stand/walk for about six hours each in an eight-hour workday. (Tr. 324.)

In August 2005, Dr. Bej completed a state agency form, and noted a diagnosis of daytime hypersomnia, which could "increase the chances of accidents at work." (Tr. 332.)

In July 2006, Dr. Bej wrote a letter addressed to  "To Whom It May Concern," stating that Ms. Opaliski had been on medical leave due to PLMD and "marked idiopathic hypersomnia."  (Tr. 366.)  He indicated that the conditions had been "unresponsive to medical therapies thus far," and that Ms. Opaliski "has been unable to work since January 2005."  (Tr. 366-67.)

In late April 2007, an MRI of Ms. Opaliski's thoracic spine showed a syrinx (fluid-filled cavity in the spinal cord) extending from the T4 to the T8 vertebrae, with degenerative disk changes in the area as well, but no growth in the syrinx or degenerative changes in the area as compared to a previous MRI.  (Tr. 361.)

4

Upon referral by Dr. Brabender, Ms. Opaliski saw neurologist David Hart, M.D., in May 2007. (Tr. 364-65.) Upon examination, Dr. Hart observed: range of motion was well preserved in all directions; no muscle tenderness in the neck; negative Spurling's sign bilaterally; normal gait and the ability to heel-toe walk without difficulty; 5/5 strength throughout both upper and lower extremities; symmetric deep tendon reflexes; negative Hoffmann's sign bilaterally; no sciatic or sacroiliac joint tenderness; subjectively diminished sensation to light touch and pinprick overlying the right arm and left hand; and negative straight leg raises. (Tr. 365.) Dr. Hart also noted Ms. Opaliski's thoracic syrinx, which was "not amenable to surgical treatment and [had] not increased in size in the past two years despite a reported increase in her reported symptomatology." (*Id*.)

### 2. Mental

In March 2005, Ms. Opaliski sought counseling and was diagnosed with generalized anxiety disorder, with her symptoms including chest tightening, breathing difficulty, angry outbursts, and memory, concentration, and judgment problems. (Tr. 303, 352). At the end of March, Ms. Opaliski called her counseling service's hotline, reporting "bad anxiety," and explaining that her grandmother had terminal cancer. (Tr. 292.)

Also in March 2005, consulting psychologist Mitchell Wax, Ph.D., examined Ms. Opaliski. (Tr. 285.) Dr. Wax noted that Ms. Opaliski's coherence was "good," and that "what she said was usually relevant." (Tr. 286.) Also, "[t]here was no evidence of mental confusion and she did not lack awareness. Her consciousness was alert and her ability to concentrate was good." (Tr. 287.) Dr. Wax diagnosed Ms. Opaliski with bipolar disorder (mild), and panic disorder without agoraphobia (moderate). He

5

concluded that "she does not have a good mental ability to perform even simple repetitive tasks." (Tr. 289.)   He assigned a global assessment of functioning (GAF) score of 50. (*Id*.)   Dr. Wax reported Ms. Opaliski had difficulty concentrating, was in physical pain, was anxious and depressed, and was unable to work. (Tr. 289.)

In June 2005, Ms. Opaliski reported to her counselor that she was still grieving over the loss of her grandmother, who had passed away in May.  (Tr. 347.)

In June 2005, state agency psychologist Michael Wagner, Ph.D., completed a psychiatric review technique form, and rendered a mental RFC assessment for Ms. Opaliski. (Tr. 311-22.)  Dr. Wagner opined that while Ms. Opaliski was moderately limited in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday or week without interruptions due to conditions; interact appropriately with the public; and respond appropriately to changes in the work place, she was not significantly limited in all other respects. (Tr. 319-20.)  Also, he opined that she "appear[ed] to retain the capacity to understand, remember and carry out simple and somewhat complex instructions," and could make simple decisions, although she would have "difficulty sustaining attention for extended period due to her anxiety." (Tr. 321.)

In August 2005, Ms. Opaliski's counseling file was closed, with a counselor noting that Ms. Opaliski had "come to only 5 counseling sessions total since" March, and that she was "not honest about [her] symptoms." (Tr. 355-56.)

**C.    Hearing Testimony**

    **1.    Ms. Opaliski**

Ms. Opaliski testified that the following conditions prevent her from working:

6

sleeping disorder, explaining that she was tired all the time; fibromyalgia; anxiety (panic attacks); depression; and pain in her hips. (Tr. 469.)  Ms. Opaliski also explained that she was pregnant at the time of the hearing and was due to give birth in early January 2008.  (Tr. 471.)  She claimed that because of her pregnancy, she was unable to take several of her medications. (*Id*.)

Ms. Opaliski stated that her fibromyalia caused her back to spasm, resulted in pain, and limited her movement.  (Tr. 473.)  It also often resulted in a sore throat and caused pain whenever she tried to lift anything, including a gallon of milk.  (Tr. 473.) Ms. Opaliski estimated that she could spend about four hours standing and four hours sitting in an eight-hour work day. (Tr. 474.)  She also said that she had to lie down almost everyday because of pain. (Tr. 475.)

Ms. Opaliski also testified regarding her anxiety and depression.  She stated that she felt anxious "almost all the time" and that she tried not to "deal with anything that's stressful" due to panic attacks.  (Tr. 476.)

Ms. Opaliski explained that she cares for kindergarten-aged daughter, including taking her to and picking her up from school everyday.  (Tr. 477.)  She also prepares dinner for her daughter and herself everyday. (Tr. 477.)   In addition, she cleans her duplex and does her own laundry. (Tr. 477-78.)

Ms. Opaliski stated that her last employer placed her on medical leave in 2005 after falling asleep on the phone at work and receiving a sleep disorder diagnosis.  (Tr. 481.)  She explained that she was on medical leave, but still employed, when the company shut down later that same year. (Tr. 483-84.)

7

### 2. Vocational Expert

Vocational expert Barbara Burk ("VE Burk") testified that she had heard Ms. Opaliski's testimony and had reviewed Ms. Opaliski's file prior to the hearing. (Tr. 492-93.) She explained that Ms. Opaliski's past work as an automobile self-service gas station attendant is listed in the Dictionary of Occupational Titles ("DOT") as number 915.477-010; that this is a light work job, which Ms. Opaliski had performed at the light level; and that it involves marginally semiskilled work with a specific vocational preparation ("SVP") rating of 3, meaning the job could be learned in one to three months. (Tr. 494, 496.) VE Burk also explained that Ms. Opaliski's past work as a food sales clerk is listed in the DOT as number 290.477-018; that it was light work, although Ms. Opaliski had performed it at a medium level; and that it involves marginally semi-skilled work with an SVP rating of 3. (Tr. 499.)

The ALJ asked VE Burk what jobs a person of Ms. Opaliski's age, education, and work experience could perform, if the person were also limited to light work; could frequently climb ramps or stairs, but not ladders, ropes, or scaffolds; could frequently stoop, kneel, crouch, and crawl; could perform simple, routine work, but not high production, quota, or piece work; and could have superficial interaction with co-workers and the public, but without negotiation or confrontation. (Tr. 499-500.) After clarifying that "simple and routine" work meant work that was "pretty much the same thing all the time and not a lot of steps involved in anything," VE Burk responded that the person could perform the jobs of automobile self-service attendant and food sales clerk. (Tr. 500.)

8

### III.  STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Act when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).   A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).  To receive SSI benefits, a recipient must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).  Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled.  For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. *Abbott v. Sullivan*,

905 F.2d 918, 923 (6th Cir. 1990).

## IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ found that Ms. Opaliski suffers from the severe impairments of fibromyalgia, bipolar disorder, panic disorder, and thoracic syrinx, but that she does not have an impairment or combination of impairments that meets or equals the listed impairments of 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 4040.1525, 404.1526, 416.920(d), 416.925 and 416.926).

The ALJ found that Ms. Opaliski has the RFC to perform the full range of light work. Specifically, she can lift up to 20 pounds occasionally and 10 pounds frequently. She can stand or walk six hours and sit for six hours during an eight hour workday. She can push/pull 20 pounds occasionally and 10 pounds frequently. She can climb ramps/stairs. She cannot climb ladders, ropes, or scaffolds. She can frequently stoop, kneel, crouch, or crawl. She can perform simple, routine work. She cannot perform high production quota work or piece work. She can have superficial interaction with co-workers and the public, but without negotiation and confrontation.

The RFC finding is based in part on the ALJ's finding that Ms. Opaliski's statements were not entirely credible.

The ALJ further found that Ms. Opaliski is capable of performing past relevant work as an automobile self-service station attendant and a food sales clerk. The ALJ concluded that Ms. Opaliski is not disabled.

## V. STANDARD OF REVIEW

This Court's review is limited to determining whether substantial evidence exists in the record to support the administrative law judge's findings of fact and whether the correct

10

legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

## VI. ANALYSIS

### A. Ability Return to Past Relevant Work

Ms. Opaliski contends that the ALJ erred in finding that she could return to past relevant work. Specifically, she asserts that the ALJ's determination that she could only perform "simple, routine" work is in conflict with the finding that she could return to her previous jobs as an automobile self-service station attendant and a food sales clerk because both jobs are "semi-skilled" jobs. She also maintains that the ALJ's determination that Ms. Opaliski "could have superficial interaction with co-workers and the public but without negotiation and confrontation," is in conflict with the finding that she is capable of returning to her previous jobs.

#### 1. Simple, Routine Work

Ms. Opaliski asserts that the ALJ erred because his decision limits Ms. Opaliski to "simple, routine work," but found that she could return to her past relevant work as a self-serve gas station attendant and a food sales clerk. Ms. Opaliski contends that

11

these jobs are semi-skilled positions and, thus, do not meet the criteria of being simple and routine.

VE Burk defined "simple, routine" as "pretty much the same thing all the time and not a lot of steps involved in anything." (Tr. 500.)  The ALJ agreed with this definition. (*Id*.)  The regulations do not define "simple" or "routine."

The regulations do define "unskilled work" and "semi-skilled work."  Unskilled work is "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time," generally in under thirty days. 20 C.F.R. § 404.1568(a).  Semi-skilled work is "work which needs some skills but does not require doing the more complex work duties." 20 C.F.R. § 404.1568(b).

Ms. Opaliski appears to suggest that because unskilled work is limited to simple duties that all simple, routine work would necessarily be unskilled work and could not fall into the category of semi-skilled work.  Ms. Opaliski provides no legal basis for this argument.

This Court's reading of the above definitions does not mirror Ms. Opaliski's.  The regulations specifically exclude "complex work duties" from semi-skilled work and nothing exists in the regulations indicating that semi-skilled work could not include simple, routine work.

Moreover, the ALJ asked VE Burk about jobs that Ms. Opaliski had "performed . . . long enough to learn how to do them," thus, eliminating concerns that because the jobs are "semi-skilled" that they would take more than a short period of time to learn. The ALJ specifically excluded another of Ms. Opaliski's past semi-skilled jobs of cafeteria counter person because she had not performed it for a sufficient amount of

12

time. (Tr. 28, 495, 501.)

In addition, VE Burk described the jobs as "marginally semi-skilled" work, indicating that the skill level required was just slightly more advanced than unskilled work.  (Tr. 499, 500.)

Therefore, sufficient evidence exists to support the ALJ's finding that Ms. Opaliski is capable of returning to the past relevant work of a self-serve gas station attendant and a food sales clerk.

### B. Significant People Contact

Ms. Opaliski contends that the ALJ erred in finding that she was able to return to past relevant work because her past relevant work requires "significant people contact." Ms. Opaliski also asserts the ALJ erred when he did not ask VE Burk whether any inconsistencies existed between her testimony and the listings in the Dictionary of Occupational Titles ("DOT").

Ms. Opaliski maintains that she could not return to her past relevant work as a self-serve gas station attendant and a food sales clerk because they require, in her words, "significant people contact" and cites the DOT listings for self-serve gas station attendant and food sales clerk.  Although not explicitly argued, Ms. Opaliski implies that the hypothetical question presented to VE Burk, which includes the ALJ's RFC finding for Ms. Opaliski, precludes jobs involving significant people contact.   However, the RFC finding permits "superficial interaction with co-workers and the public but without negotiation and confrontation" and does not exclude jobs with "significant people contact."  (Tr. 23.)  While the DOT does state that these jobs require contact with the public and "dealing with people," it does not indicate that these jobs require more than

the superficial interaction mentioned in the RFC finding. *See* DOT 915.477-010 and DOT 290.477-018. Whether these jobs require significant people contact has no bearing on whether Ms. Opaliski could perform them. Therefore, substantial evidence supports the ALJ's finding that Ms. Opaliski could return to past relevant work as a self-serve gas station attendant and a food sales clerk.

Moreover, the fact that the ALJ did not inquire into inconsistencies between the VE's evidence and the DOT's evidence is not cause for remand in this instance. SSR 00-4p requires that the ALJ question the VE about whether the VE's evidence is consistent with DOT. Generally, the VE's occupational evidence should be consistent with the DOT's occupational evidence. *Id.* If the VE's evidence appears to be in conflict with the DOT, the ALJ should obtain a reasonable explanation for the apparent conflict. *Id.*

Ms. Opaliski is correct, as conceded by the Commissioner, that the ALJ failed in his affirmative duty to inquire whether the VE's testimony is consistent with DOT. However, if the error is harmless, no remand is required. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). In the instant action, the ALJ's failure to question VE Burk regarding inconsistencies with the DOT is harmless. No inconsistencies exist between the VE's opinion that a person who could engage in "superficial interaction with co-workers and the public but without negotiation and confrontation" could perform the jobs of self-serve gas station attendant and food sales clerk and the DOT listing stating that these jobs require "dealing with people." Therefore, remand is unnecessary.

### B. Credibility of Ms. Opaliski

Ms. Opaliski claims the ALJ erred in finding that Ms. Opaliski's statements were not entirely credible. Ms. Opaliski asserts that the ALJ failed to present evidence, other than a lack of objective findings, as to why Ms. Opaliski is not credible.

Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Secretary of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). An ALJ may consider both a claimant's credibility and household activities in evaluating complaints of disabling pain. *See Weaver v. Secretary of Health and Human Servs.*, 722 F.2d 310, 312 (6th Cir. 1983); *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993). The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly. *See Villareal v. Secretary of Health and Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).

Ms. Opaliski argues that the ALJ erred in relying on objective medical evidence to question her credibility, particularly in light of the fact that she suffers from fibromyalgia. She cites *Rogers v. Commissioner*, 486 F.3d 234 (6th Cir. 2007) in support of this contention. In *Rogers*, the Sixth Circuit held that an ALJ erred in supporting his determination the claimant was not credible by pointing to a lack of objective medical evidence. The Sixth Circuit reasoned, "the nature of fibromyalgia itself renders such a brief analysis that an over-emphasis upon objective findings is inappropriate." *Id.* at 249.

However, the underlying facts of the instant action differ significantly from *Rogers*. Unlike *Rogers* where the claimant's fibromyalgia symptoms progressively worsened, no such evidence exists in the instant case. In fact, as noted by the ALJ and

15

supported by the record, Ms. Opaliski did not receive a significant amount of treatment for her fibromyalgia. (Tr. 26.)

Moreover, other evidence supported the ALJ's finding that Ms. Opaliski is not entirely credible. The ALJ noted that Ms. Opaliski's "daily actitvites are significant despite her reported physical and mental symptoms." (Tr. 27.) He pointed to the fact that she is the primary caretaker of her daughter, caring for her without reported difficulty or need for assistance; she takes care of her own personal hygiene; she prepares meals daily; and she performs household chores. (*Id*.) These observations are supported by Ms. Opaliski's own testimony and the answers she offered on her disability application. (Tr. 93-96; 476-79.) The daily activities of the claimant are a proper factor for the ALJ to consider in making a decision on credibility. 20 C.F.R. § 416.929; *see Walters v. Commissioner*, 127 F.3d 525, 532 (6th Cir.1997)(the ALJ can "consider household and social activities engaged in by the claimant in evaluating a claimant's assertion of pain or ailments").

In addition, the ALJ noted that a counselor had reported Ms. Opaliski not being honest about symptoms. (Tr. 27, citing Tr. 356.)

As Ms. Opaliski did not seek significant treatment for her fibromyalgia, engaged in significant daily activities, and raised questions of honesty with at least one medical provider, substantial evidence supports the ALJ's conclusion that Ms. Opaliski is not entirely credible.

**C.    Remand for New Evidence**

Ms. Opaliski requests a remand pursuant to sentence six of 42 U.S.C. § 405(g), based on evidence submitted to the Appeals Council and not reviewed by the ALJ.

16

This additional evidence consists of: (1) treatment records from Dr. Brabender, dated March 4, 2005 though September 17, 2007; and (2) treatment records from Dr. Bej dated August 23, 2005 through July 26, 2007.

Where the Appeals Council denied a request for review, a court cannot overturn the ALJ's decision because of evidence submitted to the Appeals Council. *See Cotton v. Secretary of Health & Human Servs.*, 2 F.3d 692, 695-96 (6th Cir. 1993). A court can remand a case for consideration of such evidence only upon a showing that the evidence is new and material and that good cause exists for the failure to include it in the prior proceeding. *See* 42 U.S.C. § 405(g); *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). Evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative hearing." *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990). To be considered material, a reasonable probability must exist that the ALJ would have reached a different decision if the evidence had been presented. *See Young v. Secretary of Health and Human Servs.*, 925 F.2d 146, 149 (6th Cir. 1990); *Sizemore v. Secretary of Health and Human Servs.*, 865 F.2d 709, 711-712 (6th Cir. 1988). Finally, the claimant must demonstrate good cause for failing to obtain the evidence prior to the administrative hearing. *See Cotton*, 2 F.3d at 695. "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) ( citing *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir.1984)). Further, the party seeking remand has the burden of demonstrating that remand is appropriate. *See Willis*, 727 F.2d at 554.

In the instant action, Ms. Opaliski fails to demonstrate, or even assert, that her evidence is "new." The additional evidence that serves as the basis for her sentence six remand was in existence and available to Ms. Opaliski prior to the administrative hearing. On this basis alone, remand is inappropriate.

In addition, Ms. Opaliski does not demonstrate "good cause" for failing to obtain the evidence prior to the administrative hearing. Ms. Opaliski's assertion of cause is that she was represented by different counsel at the hearing and that "[i]t was not until the Commissioner's decision that it was clear that statements from treating sources were insufficient evidence to document the ongoing nature of Ms. Opaliski's fibromyalgia and sleep disorder."

The fact that Ms. Opaliski was represented by different counsel at the hearing does not constitute good cause for failing to produce the evidence at the hearing. *Taylor v. Commissioner of Social Security*, 43 Fed. Appx. 941 (6th Cir. 2002) (unpublished). "[T]here is absolutely no statutory or decisional authority for [the claimant's] unstated, but unmistakable, premise that the alleged incompetence of [the claimant's] first attorney constitutes 'good cause'. . . ." *Id.* at 943.

Furthermore, Ms. Opaliski's assertion that she did not realize that the evidence she presented at the hearing was insufficient to establish her disability does not demonstrate good cause. It is unclear and simply unexplained why Ms. Opaliski would not produce all material evidence in support of her claim at the hearing. This is against reason and is in conflict with her burden as a claimant to establish the existence of her disability under the SSA. *See Wyatt v. Sec'y Health & Human Servs.*, 974 F .2d 680, 683 (6th Cir.1992). Moreover, if this Court found that this reason somehow

18

constituted good cause, claimants would essentially have *carte blanche* to remand for new evidence anytime an ALJ finds a claimant failed to establish disability.

Because Ms. Opaliski does not seek to introduce "new" evidence and does not demonstrate good cause for failing to produce the evidence previously, her request for sentence six remand pursuant to 42 U.S.C. § 405(g) is denied.

## VII.  DECISION

For the foregoing reasons, the Court finds the decision of the Commissioner is supported by substantial evidence.  Accordingly, the decision of the Commissioner is AFIRMED.

IT IS SO ORDERED.

s/ *Nancy A. Vecchiarelli*<br>U.S. Magistrate Judge

Date:  March 10, 2009

19